CRIBB, Appellant, vs. HOUGHTON and another, Respondents.

*October 15 — November 3, 1885.*

*(1) Promissory notes: Deposit as collateral. (2) Waiver of protest and notice: Guaranty: Statute of frauds.*

1. The evidence in this case is *held* to sustain a verdict to the effect that notes alleged to have been converted by defendants were held by them as collateral security for an indebtedness of the plaintiff.

2. Defendants discounted notes belonging to the plaintiff under an agreement that they would protest the same or cause them to be protested if they could, but would not be responsible for protest; that the plaintiff would, in any case, be responsible for the payment of the notes, would bear the risk of collecting them, and would at all times keep collaterals in defendants' hands as security for such collection. *Held*, that such agreement was not within the statute of frauds.

APPEAL from the County Court of *Milwaukee* County.

Action to recover the value of eleven promissory notes of various amounts, aggregating in all $679.15, alleged to have been delivered by the plaintiff to the defendants, as his bankers, during the years 1883 and 1884, for collection, and which they refused, after a demand, to surrender or account for. The answer admits possession of the notes and their value and the refusal to give them up on demand. It alleges, as a defense, that prior to the receipt of the notes in suit the defendants had discounted for the plaintiff three other notes of his customers; that it was agreed that the plaintiff should be credited with the amounts thereof in his account, but should be responsible to the defendants for the amounts so credited and should bear the risk of collecting the same, and that he should at all times keep collaterals in the hands of the defendants as security for the collection of the same; that said three notes are now in the hands of lawyers for collection and have not yet been collected; that plaintiff delivered collaterals to defendants and from time to time changed the same, and delivered the notes in suit as collaterals in pursuance of said agreement, and that the defendants held the same accordingly.

The evidence given on the trial is sufficiently stated in the opinion. There was a verdict for the defendants, and from the judgment thereon the plaintiff appealed.

*Chas. M. Bice*, for the appellant, to the point that the parol contract of guaranty alleged to have been made at the time of discounting the three notes mentioned in the

answer, was void under the statute of frauds, and evidence thereof should not have been admitted, cited *Day v. Elmore*, 4 Wis. 194; *Emerick v. Sanders*, 1 id. 77.

For the respondents there was a brief by *Jenkins, Winkler & Smith*, and oral argument by *C. H. Van Alstine*. To the point that the agreement that the defendants should not be responsible for the protest of the notes indorsed by the plaintiff and discounted for him was in substance a waiver of demand and notice on the part of the plaintiff, and that he might waive the same by parol, they cited *Worden v. Mitchell*, 7 Wis. 161.

CASSODAY, J. It seems to be conceded that the plaintiff was in the habit of taking notes from his customers in different parts of the country; that he did his banking business with the defendants from 1872 to February 25, 1884; that during that time he had frequently obtained credit with the defendants on his account or individual note, leaving with them the notes so taken from his customers as collateral.

The testimony on the part of the plaintiff tends to show that in February, 1884, he borrowed of them $600, and gave them his individual note therefor, together with the notes mentioned in the complaint as collateral security, upon the agreement that those notes should be returned on the payment of his individual note; that his individual note had been paid, and the notes so left as collateral demanded and refused before the commencement of this action. The testimony on the part of the plaintiff further tends to prove that the defendants were in the habit of discounting notes taken by the plaintiff in his business and then indorsed by him and left with the defendants, and that in all cases where any such notes so indorsed were unpaid, the defendants were to protest the same, or cause the same to be protested, and when so protested and not paid by the makers, the plaintiff would pay the amount or allow it to be charged up to his

account. The plaintiff also testified: "*Mr. Houghton* before this might have told me Wagner (a maker of one of the three notes) was slow, but I told him to protest the notes and send them right back; but I left collaterals always, $5,000 or $6,000,— if any of them failed or I failed."

There was evidence on the part of the defendants, tending to prove that during the time named the plaintiff did business with them under an agreement that for all notes they discounted for him he was to keep other notes as collateral for their payment, in case they were not paid; that the defendants should protest or cause to be protested, when they could do so, the notes discounted or left with them, but should not be responsible for the protest of any of the notes so discounted or left as collateral; that they could not undertake to have the notes protested, as some banks did not know enough to do it; that among the notes so discounted were three given in 1881–82, described in the answer, amounting in the aggregate to $603.99 and interest; that neither of those notes were protested by the banks to which the defendants had sent them for collection and protest; that the defendants had made efforts to collect those three notes at the instance and for the accommodation and benefit of the plaintiff; that the plaintiff kept in the hands of the defendants all the time collaterals for the payment of each of the three notes so discounted; that as any of such collaterals were paid from time to time the plaintiff brought to the defendants new collaterals in their places; that the eleven notes mentioned in the complaint were left by the plaintiff, and were to remain as collateral for any indebtedness he owed to the defendants; that when they were deposited by the plaintiff, he mentioned that they should be held as collateral security for the three discounted notes set forth in the answer; that such collaterals were to remain with the defendants until the suits brought to collect the three discounted notes should be decided, and if

against the plaintiff, then the defendants could take the amount of such three notes out of such collaterals; that the collaterals which the plaintiff had at the bank were left there to secure other notes than were discounted from time to time; that the plaintiff occasionally gave his notes, and these notes as collaterals; that all the notes were held by defendants as collateral for any individual note which might be given by the plaintiff, or any note which the defendants discounted in the country; that the plaintiff gave the $600 note at the time the eleven notes were left.

The jury were at liberty to believe the evidence given on the part of the plaintiff, or the evidence given on the part of the defendants. They chose to believe the latter. We think it is sufficient to sustain the verdict.

The agreement in relation to the risk of protesting notes not paid and the collection of them and keeping collaterals was clearly not within the statute of frauds. Counsel does not seriously contend that it was.

The charge of the court is criticised by counsel as "peculiarly unintelligible and mystifying to the jury." But we are constrained to think it substantially embodies all the requests to charge made by counsel, and in effect fairly submits the material questions of fact upon which the parties were at variance. We deem it unnecessary to go into any analysis of the charge.

*By the Court.*— The judgment of the county court is affirmed.